**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Alex E. Tsionis, Esq.

*Proposed Attorneys for Georgina Falu Co, LLC,*
*Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                          Chapter 11

    GEORGINA FALU CO, LLC,             Case No.: 23-11004-mew

                      Debtor.
------------------------------------------------------------x

**DEBTOR'S MOTION FOR INTERIM ORDER UNDER
11 U.S.C. §§ 105, 361 AND 363 AND FED. R. BANKR. P. 4001
AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION TO THE LENDER AND
SCHEDULING A FINAL HEARING UNDER BANKRUPTCY RULE 4001(B)**

**TO:** **THE HONORABLE MICHAEL E. WILES**
      **UNITED STATES BANKRUPTCY JUDGE**

Georgina Falu Co, LLC, the debtor and debtor in possession (the "Debtor"), by and through its proposed attorneys, the Law Offices of Avrum J. Rosen, PLLC, respectfully submits this as and for its motion (the "Motion") seeking the entry of an interim order (the "Interim Order"), pursuant to sections 105, 361 and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules: (i) authorizing the Debtor to use the cash collateral (the "Cash Collateral") of U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2017-2 (the "Trust"), a pre-petition secured lender; (ii) granting adequate protection to the Trust with respect to the use of the Cash Collateral; and (iii) scheduling a final hearing (the "Final Hearing") to consider the entry of a final order (the "Final Order") authorizing the Debtor's use of

1

the Cash Collateral. In support of this Motion, the Debtor submits the declaration of Georgina Falu ("Falu"), the Managing Member of the Debtor. In further support of this Motion, the Debtor respectfully states as follows:

## SUMMARY OF CASH COLLATERAL TERMS

1.  Under Bankruptcy Rule 4001 and LBR 4001-2, the following are the material provisions regarding the Debtor's proposed use of cash collateral (as defined in Bankruptcy Code section 363(a)):

> **Parties with Interest in Cash Collateral** (Bankr. R. 4001(b)(1)(B)(i): The Trust holds a security interest in the rents, issues and profits from the real property commonly known as 329 East 118th Street, New York, New York 10035, identified under Block 1795, Lot 16, in the Borough of Manhattan (the "Property"). Currently, the Debtor's only source of income is the collection of rents received from the Property.
>
> **Use of Cash Collateral** (Bankr. R. 4001(b)(1)(B)(ii): The Debtor is authorized to use the Cash Collateral in accordance with, and subject to, the budget (the "Budget") in order to satisfy the post-petition costs and expenses of the continued operations of its business. The initial budget (the "Initial Budget"), commencing November 7, 2023 and covering a thirteen (13) week period, is annexed to this Motion and the proposed Interim Order as **Exhibit "A"**.
>
> **Adequate Protection for the Trust** (Bankr. R. 4001(b)(1)(B)(iv): As adequate protection for any diminution in the value of the Trust's interest in its collateral resulting from: (a) the Debtor's use of Cash Collateral; (b) use, sale or lease of the Trust's collateral; or (c) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code (the aggregate amount of such diminution is referred to hereinafter as the "Adequate Protection Lien"), the Trust shall receive the following adequate protection: (i) replacement liens pursuant to section 361(2) of the Bankruptcy Code (the "Replacement Liens") on all property of the Debtor and its estate, whether now owned or hereafter acquired (collectively, the "Post-petition Collateral"); and (ii) to the extent required by the pre-petition loan documents (the "Loan Documents") to the same extent and validity as its pre-petition liens. The asserts that because the Property is over secured, the Trust has an equity cushion and thus, is not entitled to adequate protection payments. It should also be noted that the Debtor has reached out to counsel for the Trust multiple times and has not received the courtesy of a response.

2

**Carve Out**: The Adequate Protection Liens shall be subject to the following (collectively, the "Carve Out"): (i) payments of those fees due to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest thereon under 31 U.S.C. § 3717; (ii) the payment of allowed professional fees and disbursements incurred by the Debtor's professionals retained by an Order of the Bankruptcy Court, and any statutory committee (the "Committee") appointed in this case pursuant to fee orders or any Monthly Compensation Order, and in the event of a default that results in the termination of the Debtor's authorization to use cash collateral, unpaid Professional Fees and Disbursements incurred prior to delivery of a carve out trigger notice (the "Carve Out Trigger Notice") in accordance with the Budget not to exceed the sum of $25,000.00; (iii) any recoveries in favor of the estate pursuant to Chapter 5 of the Bankruptcy Code; and (iv) any amounts allowed by the Court as fees and expenses of a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $10,000.00.

**Material Terms, Including Duration, of the Use of Cash Collateral** (Bankr. R. 4001(b)(1)(B)(iii): The Debtor's authorization to use Cash Collateral shall commence as of the entry of the Interim Order and terminate upon the earliest of: (i) entry of a Final Order or a further interim order authorizing the Debtor's use of Cash Collateral; or (ii) the occurrence of a Termination Event (the "Termination Date").

Occurrence of the Termination Date shall terminate the rights of the Debtor to use Cash Collateral hereunder, but shall not in any manner affect the rights of any secured party, or in any manner the validity, priority, enforceability or perfected status of any Replacement Liens.

Termination Event: The occurrence of any of the following events, shall constitute a Termination Event: (i) this Chapter 11 case shall have been dismissed or converted to a case under Chapter 7 of the Bankruptcy Code, or there shall have been appointed in the Chapter 11 case, a trustee or examiner with expanded powers beyond the authority to investigate particular activities of the Debtor; (ii) the Interim Order is modified, vacated, stayed, reversed, or is for any reason not binding on the Debtor; (iii) the failure of the Debtor to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under the Interim Order; (iv) a default by the Debtor in reporting financial information as and when required under the Interim Order, continued uncured for a fifteen (15) day period; or (v) a variance, resulting from the Debtor's expenditures as set forth in the Budget that exceeds ten percent (10%) per line item in the Budget, unless caused by an increase in the Debtor's business.

Remedies: The Trust shall provide the Debtor, counsel for any Committee (and if no Committee is appointed, the 20 largest creditors of the Debtor), other secured parties and the Office of the United States Trustee,

3

with written notice of the occurrence of a Termination Event (the "Remedies Notice"). Upon the expiration of ten (10) business days after the Debtor, counsel for the Committee (and if no Committee is appointed, the 20 largest creditors of the Debtor) and the U.S. Trustee's receipt of the Remedies Notice, and the Debtor has failed to cure the alleged Termination Event, the Trust may move the Court on seven (7) days' notice for an Order lifting the automatic stay provisions of section 362 of the Bankruptcy Code to the extent necessary to permit the Trust to exercise its rights and remedies against the Debtor and its collateral, including, but not limited to, its right to set off against any existing Cash Collateral. The Debtor's right to use the Cash Collateral shall terminate upon the expiration of the ten-day cure period.

Determination of Validity, Enforceability and Amount of the Security Interests: The Interim Order does not contain an acknowledgment by the Debtor as to the validity, enforceability and amount of such obligation and security interest.

## JURISDICTION

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding as that term is defined within 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. On June 27, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

4. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in this case.

5. The Debtor is a New York limited liability company with its corporate office located at 175 W. 95th Street, 25B, New York, New York 10025.

6. The Debtor's primary asset is the real property commonly known as 329 East 118th Street, New York, New York 10035, identified under Block 1795, Lot 16, in the Borough of Manhattan (the "Property" as defined above). The Property contains four (4) residential apartments,

4

which the Debtor leases in exchange for rent. Upon information and belief, two of the Debtor's tenants are not paying rent and the Debtor anticipates retaining special landlord-tenant counsel to evict those tenants.

7. On or about September 13, 2017, the Debtor executed a *Semi-Annual Adjustable Term Note* (the "Note") in favor of Velocity Commercial Capital LLC in the original principal amount of $1,050,000.00. To secure repayment of the Note, the Debtor executed a *Commercial Mortgage, Security Agreement and Assignment of Leases and Rents* dated September 13, 2017 (the "Mortgage" and the Note, collectively, the "Loan") encumbering the Property.

8. Thereafter, the Loan was assigned by Velocity Commercial Capital LLC to the Trust by instrument dated May 14, 2018, and recorded on August 16, 2018 under CRFN 2018000276257.

9. On or about January 22, 2019, the Trust commenced an action styled *U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2017-2 against Georgina Falu Co. LLC et al.*, Index No. 850010/2019, in the Supreme Court of the State of New York, County of New York, seeking to, among other things, foreclose on the Mortgage secured against the Property.

10. On or about December 13, 2019, the foreclosure court entered an order granting the Trust's motion for default judgment against the Debtor, Falu and the other defendants.

11. On or about August 22, 2022, the foreclosure court entered an order granting the Trust's motion for foreclosure and sale.

12. The Debtor and Falu subsequently moved to, among other things, vacate their default. By decision and order dated on April 4, 2023, the foreclosure court denied the Debtor's and Falu's motion.

13. The Debtor and Falu have filed an appeal of the April 4, 2023 decision and order. That appeal is currently pending in the Appellate Division, First Department under No. 2023-01863. The Debtor anticipates retaining special foreclosure counsel to prosecute that appeal.

14. Currently, the Debtor's only source of income are the rents from the Property, which constitutes the Cash Collateral held by the Trust. The Debtor has immediate need for the use of cash collateral in order to meet its real estate tax obligations, insurance obligations, utility obligations, maintenance expenses and other operating expenses. As such, the Debtor files this Motion.

## RELIEF REQUESTED

15. By this Motion, the Debtor requests the entry of an Interim Order, substantially in the form annexed hereto, authorizing:

> (i) the Debtor to use the Cash Collateral, in which the Trust has an interest in, in accordance with the Budget;
>
> (ii) the granting of adequate protection to the Trust with respect to the use of the Cash Collateral; and
>
> (iii) the scheduling of a Final Hearing to be held no earlier than fourteen (14) days after the entry of the Interim Order to consider the entry of the Final Order.

16. The Debtor submits that absent authorization to use Cash Collateral to allow this Debtor to continue its post-petition operation, the Debtor, its estate, and its creditors will suffer immediate and irreparable harm.

## BASIS FOR RELIEF

17. Bankruptcy Code section 363 governs the Debtor's use of property of the estate. Bankruptcy Code section 363(c)(1) provides that:

> If the business of the debtor is authorized to be operated under section 1108 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the

ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

18.     Bankruptcy Code section 363(c)(2), however, provides an exception with respect to "cash collateral" to the general grant of authority to use property of the estate in the ordinary course as set forth in Bankruptcy Code section 363. Specifically, a trustee or debtor in possession may not use, sell, or lease "cash collateral" under subsection (c)(1) unless:

> (A)   each entity that has an interest in such collateral consents; or
>
> (B)   the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

19.     Accordingly, under Bankruptcy Code section 363(c)(2), a debtor may not use cash collateral without the consent of the secured party, or, approval from the Court. The Debtor submits that, under the circumstances here, including the Debtor's need to use Cash Collateral and the adequate protection afforded to the Trust, its request to use Cash Collateral should be granted.

## DEBTOR'S NEED TO USE CASH COLLATERAL

20.     The Debtor has significant and immediate cash needs to continue paying its ongoing obligations as a debtor in possession and propose a plan of reorganization and emerge from bankruptcy. Reorganization under Chapter 11 is critical to preserving the Debtor's value as a going concern. As shown in the Budget, the Debtor anticipates that the expenses of the Debtor for the next thirteen (13) weeks will total approximately $9,800.00. The Debtor expects receipts to total approximately $18,800.00. In addition, the Debtor has collected, and has on hand, approximately $2,300.00 to be used towards the operation of the Property.

7

21. The Debtor's immediate need for the use of cash collateral is based upon the Debtor's need to meet its real estate tax obligations, insurance obligations, utility obligations, maintenance expenses and other operating expenses. By meeting these post-petition, administrative expenses, the Debtor shall protect the assets of its creditors and preserve the value of its business as a going concern.

## PROPOSED ADEQUATE PROTECTION

22. To the extent that the Trust's interest in the Cash Collateral constitutes a valid and perfected security interest and lien as of the Petition Date, it is entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Cash Collateral. Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property used or proposed to be used by the debtor, the Court shall prohibit or condition such use as is necessary to provide "adequate protection" of that interest.

23. What constitutes "adequate protection" is a "fact-specific inquiry". *See, In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996). The purpose of adequate protection is to prevent the diminution in the value of the secured creditor's interest in their collateral during the reorganization process. *See, In re WorldCom. Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth adequate protection may be provided under section 363, makes clear that the purpose is to insure that the secured creditor receives value for which the creditor bargained for prior to the debtor's bankruptcy."): *In re Gallegos Research Group Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995) (*citing United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc. Ltd.,* 484 U.S. 365 (1988)) ("[T]o determine whether an entity is entitled to adequate protection and the type and amount of adequate protection required, a court must determine the value of the collateral; the creditor's interest in the collateral and the extent to which that value will decrease during the course of the

8

bankruptcy case"); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (focus is on protection of the secured creditor from diminution in value of its collateral during reorganization process). However, "[a]dequate protection, not absolute protection, is the statutory standard." *In re Beker Indus.*, 58 B.R. at 736.

24. The Debtor proposes, subject to this Court's approval, to provide the Trust with the following adequate protection:

> i. Replacement Liens on the Post-petition Collateral to the same extent and validity as its pre-petition liens; provided, however, that the Post-petition Collateral shall not include any recoveries under Chapter 5 of the Bankruptcy Code and are further subject to the Carve Out described herein;
>
> ii. **Carve Out**: The Adequate Protection Liens shall be subject to the following Carve Out: (i) payments of those fees due to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest thereon under 31 U.S.C. § 3717; (ii) the payment of allowed professional fees and disbursements incurred by the Debtor's professionals retained by an Order of the Bankruptcy Court, and any statutory committee appointed in this case pursuant to fee orders or any Monthly Compensation Order, and in the event of a default that results in the termination of the Debtor's authorization to use cash collateral, unpaid Professional Fees and Disbursements incurred prior to delivery of a carve out trigger notice in accordance with the Budget not to exceed the sum of $25,000.00; (iii) any recoveries in favor of the estate pursuant to Chapter 5 of the Bankruptcy Code; and (iv) any amounts allowed by the Court as fees and expenses of a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $10,000.00.

25. The Debtor asserts that because the Property is over secured,[1] the Trust has an equity cushion and thus, is not entitled to adequate protection payments. It should also be noted that the Debtor has reached out to counsel for the Trust multiple times and has not received the courtesy of a response.

---

[1] The Debtor disclosed on its Schedule A/B that the Property, as of the Petition Date, has a value of $2,200,000.00. The Trust's proof of claim (Claim No. 5) is $1,639,044.84.

9

26. The Debtor shall undertake to keep the Collateral fully insured against all loss, peril and hazard and make the Trust the additional insured in any such insurance policy maintained by the Debtor as to the Collateral. The Debtor shall timely pay any and all undisputed post-petition taxes, assessments and governmental charges with respect to the Collateral as provided for under the Loan Documents. The Debtor, at the request of the Trust, will provide proof of insurance, and will give proof of any reasonable requested changes within five (5) business days of written demand and will give the Trust reasonable access to its records in this regard.

27. The Debtor will provide the Trust, upon ten (10) business day's written notice, at any time during the Debtor's normal business hours, the right to inspect, audit, examine, check, make copies of or extract from the books and records of the Debtor, and monitor the Collateral, and the Debtor will make all of the same reasonably available to the Trust and its representatives, for such purposes.

28. The Debtor will provide the Trust with the right to inspect the location and the Debtor's books and records upon reasonable request and will further provide the Trust with all of the Debtor's operating reports on a timely basis.

## **THE BUDGET**

29. The Debtor has prepared and provided an initial three-month Budget (which is annexed to the Interim Order). The initial Budget has been thoroughly reviewed by the Debtor and its management and sets forth the periods covered thereby, among other things, the Debtor's projected monthly disbursements for each month commencing with the month starting on November 7, 2023.

23-11004-mew    Doc 24    Filed 11/21/23    Entered 11/21/23 14:56:24    Main Document
Pg 11 of 11

## NOTICE

30.    Notice of the Motion shall be given to: (i) the Office of the United States Trustee; (ii) the Debtor's 20 largest unsecured creditors; (iii) the Trust or its counsel; and (iv) any party having filed a notice of appearance in the case.

## NO PRIOR REQUEST

31.    The Debtor has not previously sought the relief sought herein before this Motion.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an interim order, substantially in the form the proposed Interim Order annexed hereto: (i) authorizing the Debtor to use the Cash Collateral; (ii) granting adequate protection to the Trust with respect to the use of the Cash Collateral; (iii) scheduling a Final Hearing to consider the entry of a Final Order; together with (iv) such other, further and different relief that this Court deems just, proper and equitable under the facts and circumstances herein.

Dated:  November 21, 2023　　　　　　　　　Respectfully submitted,
　　　　Huntington, New York
　　　　　　　　　　　　　　　　　　　　　　**Law Offices of Avrum J. Rosen, PLLC**

　　　　　　　　　　　　　　　By:    */s/ Avrum J. Rosen*
　　　　　　　　　　　　　　　　　　　Avrum J. Rosen, Esq.
　　　　　　　　　　　　　　　　　　　Alex E. Tsionis, Esq.
　　　　　　　　　　　　　　　　　　　38 New Street
　　　　　　　　　　　　　　　　　　　Huntington, NY 11743
　　　　　　　　　　　　　　　　　　　(631) 423-8527
　　　　　　　　　　　　　　　　　　　arosen@ajrlawny.com
　　　　　　　　　　　　　　　　　　　atsionis@ajrlawny.com

　　　　　　　　　　　　　　　　　　　*Proposed Counsel to the Debtor*
　　　　　　　　　　　　　　　　　　　*and Debtor in Possession*

11