**UNITED STATES BANKRUTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Hearing Date: February 7, 2024
Hearing Time: 10:00 a.m.

---------------------------------------------------

In re:

<u>NOTICE OF MOTION TO DISMISS AND
MOTION FOR STAY RELIEF</u>

Case No.: 23-1104-mew
Chapter 11

GEORGINA FALU CO, LLC

Debtor,

Assigned to:
Hon. Michael E. Wiles
Bankruptcy Judge

---------------------------------------------------


Please take notice that U.S. Bank National Association, as Trustee for Velocity

Commercial Capital Loan Trust 2017-2, ("<u>Secured Creditor</u>"), seeks relief from the automatic stay as

to the property located at 329 East 118th Street, New York, NY 10035, and will move this Court before

the Honorable **Michael E. Wiles,** United States Bankruptcy Judge in the Courtroom located at the

United States Bankruptcy Court for the Southern District of New York,  at the United States Bankruptcy

Court, One Bowling Green, Courtroom 617, New York, New York 10004-1408, on February 7, 2024 at

10:00 AM, or as soon thereafter as counsel may be heard, for an Order granting such creditor relief

from the automatic stay and for such other and further relief as the Court may deem just and

proper.

PLEASE TAKE FURTHER NOTICE that pursuant to Rule 9006-1, Local Rules of

Bankruptcy Practice and Procedure for the Southern District of New York, answering papers and

memoranda of law, if any, must be filed with the Court and served upon the undersigned counsel

to be received by the undersigned no later than seven (7) calendar days before the return date of

this motion.

This 11th day of January, 2024.

**McMichael Taylor Gray, LLC**

By: /s/ Gregory Sanda
Gregory Sanda, Esq.4446340
MCMICHAEL TAYLOR GRAY, LLC
Attorney for Creditor
3550 Engineering Drive, Suite 260
Peachtree Corners, GA 30092
Telephone: 404-474-7149
Facsimile: 404-745-8121
E-mail: gsanda@mtglaw.com
MTG File No.: 23-000605-03

TO:
Georgina Falu Co, LLC
175 W. 95th Street
25B
New York, NY 10025

Georgina Falu
175 W. 95th Street
25B
New York, NY 10025

Georgina Falu Co, LLC
329 East 118th Street
New York, NY 10035

Georgina Falu
329 East 118th Street
New York, NY 10035

Charles A Higgs
Law Office of Charles A. Higgs
2 Depot Plaza
Bedford Hills, NY 10507

Mark Bruh
DOJ-Ust
Southern District of New York

Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408

Small Business Administration
26 Federal Pl 3100
New York, NY 10278

United States Trustee
Office of the United States Trustee-NY
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408

Honorable Michael E. Wiles
One Bowling Green
New York, NY 10004-1408

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
MANHATTAN DIVISION

In re:

**GEORGINA FALU CO, LLC,**                    **Case No. 23-11004-mew**

                          **Debtor.**          **Chapter 11**

### SECURED CREDITOR'S MOTION TO DISMISS
### CHAPTER 11 SARE CASE, AND MOTION FOR STAY RELIEF

U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust

2017-2 (the "Trust"), as a secured creditor and party in interest, pursuant to 11 U.S.C. § 1112(b)

moves this Court for entry of an order dismissing the above-captioned single asset real estate

debtor bankruptcy case[1] on the grounds, *inter alia*, that Debtor filed its voluntary petition in bad

faith on the eve of the auction pursuant to a judgment of foreclosure and sale, and failed to file a

plan of reorganization or make interest payments.  In support of the foregoing, the Trust

respectfully represents the following:

#### INTRODUCTION

This seven-months-old single asset real estate debtor bankruptcy case should be

dismissed because the Debtor filed the petition on the eve of foreclosure sale to gain a litigation

advantage in a more favorable forum, and because the Debtor has done nothing to restructure its

debts. Indeed, there is no reasonable likelihood of rehabilitation.  The Debtor has proposed no

---

[1] At the interim cash collateral use hearing, and in direct contravention of the Debtor's voluntary petition,
Debtor's counsel argued that the Debtor is not a single asset real estate ("SARE") entity because its owner
operates a consulting business from the property generating minimal income.  In fact, the Debtor's
prepetition communications with the Trust, Schedules and Monthly Operating Reports do not support this
position.  To qualify as a SARE and change its designation, Debtor must move the Court requesting such
relief and produce tax returns, bank statements, and other business records proving that it engages in
*substantial* business activities other than renting residential units in its only building.

plan of reorganization and has not commenced monthly interest payments because its rental

business has deteriorated, and the estate otherwise has insufficient income.  Accordingly, cause

exists to dismiss the case under section 1112(b) of the Bankruptcy Code.  The Trust should be

permitted to exercise its rights outside of bankruptcy, where the Debtor has no unencumbered

assets to be liquidated for the benefit of unsecured creditors.

The Debtor scheduled the value of its property securing the Trust's claim at $2.2 million.

This unrealistic estimate is unsupported by appraisals or any competent evidence.  The Trust

submits that the "as is" market value of the Debtor's real property securing its claim is only $1.4

million, as set forth in the Broker Price Opinion ("BPO") attached hereto as **Exhibit A**.[2]  On

September 8, 2023, the Trust filed its Proof of Claim for $1,639,044.84.  The Court should

dismiss this bankruptcy case because there is no equity in the Debtor's property to fund a

reorganization and there is no prospect of successful rehabilitation.

In the alternative, the Court must grant stay relief to the Trust because the Debtor filed

Chapter 11 bankruptcy as a "single asset real estate" entity, as such term is defined in 11 U.S.C.

§ 101(51B), and the Debtor failed to comply with requirements of 11 U.S.C. § 362(d)(3). *See*

Voluntary Petition for Non-Individuals Filing for Bankruptcy, ¶ 7 [DE 1].  Debtor failed to file a

Chapter 11 Plan and Disclosure Statement by the October 25, 2023 deadline and it has failed to

make any interest payments to the Trust.  Accordingly, cause exists to lift the automatic stay to

allow the Trust to proceed with the foreclosure auction of the Debtor's property, on the grounds

that (i) the voluntary petition was filed in bad faith on the eve of the auction; (ii) Debtor is a

SARE that failed to file a plan or make interest payments; (iii) Debtor has no equity in the

---

[2] The fallacy of  Debtor's exorbitant valuation is highlighted by its unsuccessful attempt to sell the
property since July 28, 2020.  Indeed, Debtor's broker listed the property for sell at $1,635,000.

2

Trust's collateral; and (iv) Debtor has no hope of filing a confirmable plan of reorganization to

successfully rehabilitate the business.

## JURISDICTION, VENUE AND STANDING

1.      This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C.

§§ 157 and 1334(b).

2.      Venue of this proceeding and this Motion is proper in this District pursuant to 28

U.S.C. §§ 1408 and 1409.

3.      This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      The Trust has standing to bring the Motion pursuant to 11 U.S.C. § 1109(b).

## PARTIES AND BACKGROUND

5.      The Debtor is operated and managed by its CEO/Managing Member, Dr.

Georgina Falu ("Falu"). *See* Declaration of Georgina Falu for Chapter 11 Debtor Pursuant to LR

1007-2 (the "Declaration") [DE 4].

6.      On January 22, 2019, the Trust filed a commercial mortgage foreclosure lawsuit

against the Debtor and Falu in the Supreme Court for the State of New York, New York County,

under Index Number 850010/2019 (the "Foreclosure"), to recover against the real property

located at 329 East 118th Street, New York, NY 10035 (the "Mortgaged Property").

7.      On August 29, 2022, the Honorable Francis Kahn, III, J.S.C., entered an

*Judgment of Foreclosure and Sale and Decision and Order on Motion* (the "Foreclosure

Judgment"), in favor of the Trust, and against the Debtor, in the amount of $1,286,033.29,

together with interest at the note rate from April 30, 2021 through entry of the Foreclosure

Judgment, 9% statutory interest thereafter, plus costs of $2,708.00, and attorney's fees of

$18,000.00.  The Foreclosure Judgment also permitted the judicial sale of the Mortgaged

3

Property.  Neither the Debtor nor Falu, who were and are represented by counsel in the

Foreclosure, appealed the Foreclosure Judgment, and the time to do so expired long ago.

8.      To further delay the Foreclosure, the Debtor and Falu engaged in extensive

frivolous motion practice. On September 30, 2022, Debtor and Falu filed a baseless motion to

vacate the Foreclosure Judgment. This was duly denied by the trial court judge on April 4, 2023,

and the Trust was permitted to resume its scheduling of the foreclosure auction.

9.      The first auction was scheduled for May 31, 2023, which led the Debtor and Falu

to file their second frivolous motion, this time by Order to Show Cause, on May 16, 2023. The

trial court judge denied their request for a Temporary Restraining Order on May 17, 2023, and

then denied the motion outright on May 30, 2023. As a courtesy to the movants, the trial court

judge canceled the May 31, 2023 sale, but permitted the Trust to reschedule the sale

immediately, subject to NYS rules for posting and publication of the notice of sale.

10.     A second foreclosure auction was duly scheduled for June 28, 2023, and Notice of

Sale was published and posted in accordance with New York law.

11.     On June 27, 2023 (the "Petition Date"), the day before the foreclosure sale, the

Debtor filed for Chapter 11 bankruptcy as a single asset real estate debtor ("SARE").

12.     As of the Petition Date, the Debtor owed Trust at least $1,639,044.84 and such

amount increases every day. *See* Claims Register, # 5-1.

13.     As security for the repayment of the indebtedness under the $1,050,000 Semi-

Annual Adjustable Term Note which matures on October 1, 2047 (the "Note"), on September 13,

2017 the Debtor executed a *Commercial Mortgage, Security Agreement and Assignment of

Leases and Rents* (the "Mortgage") on the Mortgaged Property, personal property and fixtures

identified in the Trust's proof of claim. *See Id*.  True and correct copies of the Note and

Mortgage are attached to the Trust's proof of claim, and incorporated by reference herein. The Trust's Mortgage is a valid first-priority perfected lien on the Debtor's property, fully enforceable in accordance with the terms of the underlying loan documents, without defense, offset or counterclaim of any nature.

14.     On December 5, 2023, the Court entered the *Interim Order Under 11 U.S.C. §§ 105, 361 and 363 and Fed. R. Bankr. P. 4001 Authorizing Debtor to Use Cash Collateral and Scheduling a Final Hearing Under Bankruptcy Rule 4001(B)* [DE 33].

15.     The Debtor has made no monthly interest payments to the Trust.

16.     The Debtor has filed no Plan of Reorganization.

17.     The Debtor's monthly operating reports from Petition Date through September 30, 2023 [DE 29, DE 30, DE 31, and DE 32] show that the Debtor operates at a loss during this case and confirms that the Debtor does not generate sufficient income to pay mortgage debt, real estate taxes, insurance, maintenance, repairs, utilities, and professional fees.

18.     The Debtor has not filed monthly operating reports for October 2023,November 2023, and December 2023.

## REQUEST FOR RELIEF

### A.  Case Dismissal is Warranted

19.     Pursuant to 11 U.S.C. § 1112(b), a bankruptcy court, upon request of a party in interest, shall dismiss a Chapter 11 bankruptcy for "cause."  Bankruptcy courts have broad discretion in deciding whether to dismiss a case for cause. *See, e.g., In re Ronald Kern & Sons*, 2002 U.S. Dist. LEXIS 13884 (W.D.N.Y. 2002).  Cause includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).  "If 'cause' is established, and the Court does not find either specific

unusual circumstances or the need for appointment of a Chapter 11 Trustee, the Court must

convert or dismiss the Chapter 11 case." *In re Spencerport Dev., LLC*, 2014 Bankr. LEXIS 4909,

*5 (Bankr. W.D.N.Y. 2014) (emphasis in original).

20.     Section 1112(b) of the Bankruptcy Code includes a non-exhaustive list of what

may constitute "cause" for dismissal of a Chapter 11 bankruptcy. *See In re State Street Assoc.,*

*L.P.*, 348 B.R. 627, 639 (Bankr. N.D.N.Y. 2006) (noting in pre-BAPCPA case that amended

section 1112(b) contains non-exclusive factors to be considered in determining whether cause

exists to dismiss a case). A party need not demonstrate that all the elements of "cause" can be

met. *See In re TCR of Denver, LLC*, 338 B.R. 494, 500 (Bankr. D. Colo. 2006). The bankruptcy

court has wide discretion to determine if cause exists and how to ultimately adjudicate the case.

*In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010); *In re The 1031 Tax*

*Group, LLC*, 375 B.R. 78, 93 (Bankr. S.D.N.Y. 2007). Trust contends cause for dismissal of the

instant bankruptcy case exists under 11 U.S.C. § 1112(b) for several reasons, including the

inherent requirement of good faith, substantial or continuing losses or diminution of the estate,

and that there is no reasonable likelihood of rehabilitation.

### i.     Debtor's Lack of Good Faith

21.     It is well settled law in the Second Circuit and in several other circuits that lack of

good faith, or the existence of bad faith in commencing or prosecuting a bankruptcy case is

"cause" for dismissing a bankruptcy case pursuant to section 1112(b) of the Bankruptcy Code. A

bankruptcy court may dismiss a chapter 11 case for lack of good faith, as "the requirement of

good faith has been held to be an implicit condition to the filing and maintenance of a

bankruptcy case for over a century." 7-112 Collier on Bankruptcy P. 1112.07; *see also Little*

*Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068,

1071 (5th Cir. 1986) ("every bankruptcy statute since 1898 has incorporated literally, or by

judicial interpretation, a standard of good faith for the commencement, prosecution, and

confirmation of bankruptcy proceedings").  The Second Circuit has summarized certain bad faith

factors as follows:

1) The debtor has only one asset;
2) The debtor has few unsecured creditors, whose claims are small in relation to those of the secured creditors;
3) The debtor's one asset is the subject of a foreclosure action because of arrearages or default on the debt;
4) The debtor's financial condition is, in essence a two-party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
5) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
6) The debtor has little or no cash flow;
7) The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and
8) The debtor has no employees.

*See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d

Cir. 1997); *see also In re 68 West 127 Street, LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002).  It is

settled in this circuit that "[c]ause for dismissal may be found based on unenumerated factors,

including 'bad faith.'" *In re Century/ML Cable Venture*, 294 B.R. 9, 34 (Bankr. S.D.N.Y. 2003)

(citing *C-TC*, 113 F.3d at 1310).

22.     Each of these "bad faith" factors apply to the Debtor.  The Debtor's history as a

frivolous litigator and filer in the last-minute to prevent a foreclosure sale of its sole asset

evidences intent to delay or frustrate the legitimate efforts of the Trust to enforce its rights.  With

no employees and limited revenue making it unable to meet current expenses, including

mortgage debt interest payments, real estate taxes, utilities, repairs and maintenance, and

professional fees, the Debtor is a SARE embroiled in a two-party dispute who owns a dilapidated

four unit residential rental property.  The Debtor has few unsecured creditors (*see* Schedules and

Claims Register), whose claims are small in relation to those of the Trust. Indeed, the non-insider, unsecured debt is insignificant relative to the debt owed to the Trust, and the Debtor's sole asset is the subject of foreclosure proceedings filed by the Trust caused by Debtor's defaults on the Trust's loan.

23.    The Debtor's primary financial problem is a two-party dispute between the Debtor and Trust, which can be resolved in the pending state foreclosure action. Notably, the Debtor has not paid the Trust *in five and a half years*, since June 1, 2018. Despite the existing forum in Supreme Court (New York County), the Debtor has chosen the Bankruptcy Court as its new venue to attempt to restructure its debt owed to the Trust.

24.    The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditor to enforce its rights. Notably, the Debtor waited to file a voluntary petition and did so strategically on the eve of foreclosure to prevent the imminent sale of its property. This scheming plan of action is the epitome of bad faith. The notable fact that cannot be lost here is that for several years the Debtor and Falu have been unable to refinance the mortgage debt owed to the Trust.

25.    Applying the facts of this case to the bad faith factors itemized above demonstrates cause exists to dismiss the bankruptcy case. The Debtor is not viable; employed unfair litigation tactics by filing this bankruptcy case to stall a pending foreclosure case, and it continues to have no legitimate means of rehabilitation. The Debtor's bad faith is confirmed by its repeated failures and utter lack of progress during this seven months old bankruptcy case: initial use of cash collateral without authorization, no filed plan, no interest payments to Trust, delinquent monthly operating reports, and replacing counsel soon after filing and replacement counsel's threat of withdrawal. *See In re Asbridge*, 61 B.R. 97, 102 (Bankr. D. N.D. 1986) ("a

lack of good faith exists where at the outset; the debtor is not a viable economic entity and it is obvious that the petition was filed for the sole purpose of frustrating and delaying legitimate efforts of secured creditors to enforce their rights").

26.     In a set of facts like here, the Debtor in *Southern Communities* owned an asset that was already involved in a foreclosure action, and the company was not economically sustainable, as it could not generate sufficient cash flow to service its mortgages or sustain operating expenses. 57 B.R. 215 (Bankr. M.D. Fla. 1986).  The court dismissed the bankruptcy for cause and reasoned that "one need not engage postulating to conclude that by some magic all of a sudden this frog will turn into a prince and will be ready to proceed toward a fruitful economic life." *Southern Communities*, 57 B.R. at 218.  *See also C-TC 9th Ave. P'ship*, 113 F.3d at 1310 (2d Cir. 1997) ("The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. If there is not a potential business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre ….") (quoting *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985)); *In re Éclair Bakery Ltd.*, 255 B.R. 121, 137-38 (Bankr. S.D.N.Y. 2000).

27.     Dismissal of this bankruptcy case is in the best interests of creditors and the estate.  Exceptions provided by 11 U.S.C. § 1112(b)(1) or (b)(2) do not apply in this case.  No party in interest has requested the appointment of a Chapter 11 Trustee and no "unusual circumstances" exist establishing that case dismissal is not in the best interests of creditors and the estate.  *See In re Gateway Access Solutions, Inc*., 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007) (after the movant shows cause, the burden shifts to the debtor to prove that there are unusual circumstances under section 1112(b)(2)).  The Debtor's financial history is a pattern of steady

decline and it cannot prove any circumstances justifying continuation of this ineffective and wasteful bankruptcy.

28.     Allowing the Debtor to continue these practices under the protection of Chapter 11 will result in continued loss to or diminution of the estate.  The record before the Court reflects the absence of a reasonable likelihood of rehabilitation.  The Debtor has no unencumbered assets to be liquidated for the benefit of unsecured creditors and secured creditors can exercise their rights outside of bankruptcy.  Debtor has not proposed any plan because there are no set of circumstances under which reorganization is possible.  Therefore, the Court should dismiss the case.

### ii.     Substantial or Continuing Losses or Diminution of the Debtor's Estate

29.     The first prong of establishing cause under section 1112(b)(3)(A) of the Bankruptcy Code is indisputably met.  The Debtor's negative and declining cash flow alone is sufficient. *See In re AdBrite Corp.*, 290 B.R. 209, 215-16 (Bankr. S.D.N.Y. 2003) (collecting cases).  The Debtor's Declaration, Schedules, Statement of Financial Affairs [DE 3] and monthly operating reports present a rapidly deteriorating business, and identify the following facts: (i) $230,000 in unpaid prepetition rent by the Debtor's tenants, (ii) $22,164 in unpaid prepetition utilities; (iii) only $5,675 rental income for 2023 as of the Petition Date; (iv) $80,800 rental income in 2022; (v) $141,387 rental income in 2021; and (vi) total post-petition income of only $17,140.  The estate has been further diminished by $13,000 paid in bankruptcy attorney retainers to two law firms who have provided no value to the estate, four pending eviction cases that are not being prosecuted, and the accrual of substantial per diem interest upon the Trust's claim.

### iii.   <u>No Reasonable Likelihood of Rehabilitation</u>

30.     Debtor has still not proposed any plan of reorganization, not even a visionary scheme. Undisputed material facts concerning the Debtor's dire financial position would render any form of rehabilitation impossible. "When visionary schemes for rehabilitation entail significant risk to creditors without any reasonable probability that the debtor can successfully rehabilitate, conversion or dismissal is generally in order*." In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr. W.D. Tenn. 1992); *see also Tennessee Publishing Co. v. American Nat'l Bank*, 299 U.S. 18, 22 (1936) ("[H]owever honest in its efforts the debtor may be, and however sincere its motives the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitations."); *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991) ("There must be 'a reasonable possibility of a successful reorganization within a reasonable time.'") (quoting *United Sav. Ass'n. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988)). Debtors are required to "do more than manifest unsubstantiated hopes for a successful reorganization." *Brown*, 951 F.2d at 572 (quoting *In re Canal Place Ltd. Partnership*, 921 F.2d 569, 577 (5th Cir. 1991)).

31.     Debtor is no closer to reorganization today than it was seven months ago on the June 27, 2023 petition date. The Debtor has languished in bankruptcy court for seven months continually failing to file required disclosures, has filed no plan of reorganization, has not re-listed the Property for sale, has obtained no debtor-in-possession financing or cash infusion by equity or another permissible lending source, continues to defer essential repairs and maintenance contributing to further collateral deterioration, and generates insufficient income to meet monthly operating expenses. For two years the Trust has received no payments from the Debtor or Falu. The Trust demands prompt liquidation of its deteriorating collateral to reduce

the growing unsecured deficiency claim. The Debtor's grave financial situation is compounded

by its dilatory tactics and lack of diligence making reorganization futile.

32.     Courts have found that creditor opposition to, or delays in, a debtor's

reorganization can render a debtor's reorganization unrealistic or unlikely and have dismissed

such cases. *See, e.g., In re Tiana Queen Motel, Inc.*, 749 F.2d 146, 151-52 (2d Cir. 1984), *cert.*

*denied*, 471 U.S. 1138, 105 S. Ct. 2681, 86 L. Ed. 2d 699 (1985) (finding section 1112(b) relief

warranted where debtor did not demonstrate a realistic possibility of rehabilitation and any

further delay would be at the expense of the secured creditor); *In re Greene*, 57 B.R. 272, 277

(Bankr. S.D.N.Y. 1986) (finding 1112(b) relief warranted where holder of the largest secured

and unsecured claims against the debtors unequivocally stated it will not accept the debtors' plan

or any plan that delays the creditor's right to realize on its collateral leaving the debtor without

the prospect of a confirmable plan); *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 820-21 (Bankr.

N.D.N.Y. 1989) (finding section 1112(b) "is to provide relief where the debtor's efforts, however

heroic, have proven inadequate to the task of reorganizing his affairs effectively within a

reasonable amount of time") (quoting *Tiana Queen Motel*, 749 F.2d at 152); *Milford Conn.*

*Assocs., L.P. v. Adams (In re Milford Conn. Assocs., L.P.)*, 404 B.R. 699, 708-09 (D. Conn.

2009) (finding cause exists under section 1112(b) "where reorganization seems unlikely or

unrealistic based on the Debtor's track record as debtor-in-possession and where the risk of delay

falls entirely on the creditors."); *In re Ledges Apartments*, 58 B.R. 84, 87-88 (Bankr. D. Vt.

1986) (holding dismissal under section 1112(b) warranted where there was negative cash flow

resulting from payments being made to non-debtor entity in which debtor's partners had an

interest and there was no possibility of rehabilitation where secured creditors opposed proposed

plan).

### iii.  **If the Bankruptcy Case is Not Dismissed, Stay Relief Must Be Granted**

33.     Section 362(d)(3) of the Bankruptcy Code[3] provides the court "*shall* grant relief

from the stay" in the case of a SARE debtor where the moving creditor's claim is secured by an

interest in the real estate, unless within 90 days of the filing, the debtor "filed a plan of

reorganization that has a reasonable possibility of being confirmed within a reasonable time," or

the debtor commenced monthly payments to the secured creditor at the nondefault contract rate

of interest. 11 U.S.C. § 362(d)(3) (emphasis added).  Stay relief is mandated here because the

Debtor failed to file any plan, and did not make monthly interest payments.

34.     In addition to the statutory right to stay relief under 362(d)(3), stay relief is proper

because the Trust's BPO and Debtor's inability to sell the Mortgaged Property show that the

Debtor has no equity in the premises under 11 U.S.C. § 362(d)(2)(A).

35.     Third, stay relief is proper because the Debtor has no chance of reorganization, as

it lacks the ability to repay the mortgage debt and there has been no significant or material

change in the Debtor's financial circumstances, leading to the inescapable conclusion that the

bankruptcy filing was part of a scheme to delay and hinder the Trust.

**WHEREFORE**, the Trust respectfully requests that this Court issue an Order (i)

dismissing the bankruptcy case pursuant to 11 U.S.C. § 1112(b), in the alternative, (ii) granting

stay relief under 11 U.S.C. § 362(d), and (iii) granting such other relief as the Court deems just

and proper.

Dated: January 11, 2024

By: */s/ Gregory Sanda_____*

---

[3] Section 362(d)(3) of the Bankruptcy Code was intended to "address perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they can reorganize successfully." 3 Collier on Bankruptcy ¶ 362.07 (16th ed. 2022) (citing S. Rep. No. 168, 103d Cong., 1st Sess. (1993); 140 Cong. Rec. 10764 (daily ed. October 4, 1994).

Gregory Sanda, NYBN 4446340
Andrew Kamensky, NYBN 4963757
MCMICHAEL TAYLOR GRAY, LLC
3550 Engineering Drive, Suite 260
Peachtree Corners, GA 30092
Telephone: (404) 474-7149
Facsimile: (404) 745-8121
gsanda@mtglaw.com
akamensky@mtglaw.com
*Attorneys for Velocity Commercial
Capital Loan Trust 2017-2*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion was served via CM/ECF electronic service upon counsel for the Debtor and all parties in interest who have filed a notice of appearance, and as noted below.

**<u>Via U.S. Mail</u>**
Georgina Falu Co, LLC
175 W. 95th Street
25B
New York, NY 10025

Georgina Falu
175 W. 95th Street
25B
New York, NY 10025

Georgina Falu Co, LLC
329 East 118th Street
New York, NY 10035

Georgina Falu
329 East 118th Street
New York, NY 10035

**<u>Via CM/ECF electronic service</u>**

Charles A Higgs
Law Office of Charles A. Higgs
2 Depot Plaza
Bedford Hills, NY 10507

Mark Bruh
DOJ-Ust
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408

Small Business Administration
26 Federal Pl 3100
New York, NY 10278

United States Trustee
Office of the United States Trustee-NY
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408

Honorable Michael E. Wiles
One Bowling Green
New York, NY 10004-1408

This 11th day of January, 2024.

_/s/ Gregory Sanda_
MCMICHAEL TAYLOR GRAY, LLC
3555 Engineering Drive, Suite 260
Peachtree Corners, GA 30092